*MHN*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANIL GOYAL, | ) |
|         Plaintiff, | ) No. 05 C 5069 |
| v. | ) Judge Rebecca R Pallmeyer |
| GAS TECHNOLOGY INSTITUTE, | ) Magistrate Judge Arlander Keys |
|         Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiff's Motion to Quash Attorney's Lien and Order Return of All fees Paid Improperly to Barry A. Gomberg and Associates ("Gomberg") by the Defendant. Gomberg represented the Plaintiff, Mr. Anil Goyal, in his early attempts to resolve his dispute with his former employer, Gas Technology Institute ("GTI"). For the reasons set forth below, Mr. Goyal's Motion is Granted.

## BACKGROUND

In October 2002, Mr. Goyal provided the CEO of GTI with substantial evidence of a fraud committed by two of Mr. Goyal's superiors. Mr. Goyal also disclosed his belief that certain members of upper-level management were involved in the fraud. Soon thereafter, Mr. Goyal began receiving unfavorable performance reviews, which were inconsistent with the favorable reviews he had received since the beginning of his employment in 1977. GTI suspended Mr. Goyal in September of 2003 and terminated his employment in March of 2004.

In the months following his suspension from GTI, Mr. Goyal attempted to settle his dispute with GTI by participating in company-sponsored mediation sessions. In September of 2003, Mr. Goyal interviewed with and then retained Barry A. Gomberg & Associates ("Gomberg") to represent him during mediation. Mr. Goyal spoke with Mr. Barry Gomberg or members of his staff on at least four occasions before signing a short Retainer Agreement on September 24, 2003. The Agreement provided, in relevant part:

> Our fee is an initial flat non-refundable retainer of $2500. You are responsible for [sic](costs, faxes, telephone calls, etc.) In addition to the aforementioned Retainer fee, effective immediately our fee includes a ten (10) percent contingency on all monies and items of value that we secure for you beyond what you have obtained from Gas Technology Institute to this date as evidenced by the attached severance Agreement . . . . We have a lien on all funds secured by us. . . . This Agreement does not contemplate litigation.

Gomberg Ex. A.

On November 21, 2003, the parties met with mediator Brad Ginn. Goyal Ex. 3, at 3-4. At the conclusion of that mediation session, GTI offered Mr. Goyal somewhere between $121,712 (Mr. Goyal's representation) and $375,000 (Gomberg's representation) to settle Mr. Goyal's claims. Mr. Goyal rejected the offer. Nevertheless, on December 2, 2003, Mr Gomberg sent GTI's attorneys, Hinshaw and Culbertson, a letter claiming a lien for attorneys fees in the amount of $70,000. Gomberg Ex. B. Mr. Gomberg claims that he sent a copy of the lien to Mr. Goyal by

regular U.S. Mail. Gomberg Ex. C. Mr. Gomberg has offered no explanation for how he arrived at the $70,000 figure.

The parties mediated a second time with Mr. Ginn on December 10, 2003. Mr. Goyal claims that GTI raised its offer to $165,000 at that time, and then subsequently raised its offer to $375,000 in February of 2004.

On March 3, 2004, Mr. Gomberg sent Mr. Goyal an email, stating "As you know, I telephoned you this morning and notified you that the mediator suggested we settle your case for $432,000 in a lump sum. You rejected the number and told me to inform the mediator of such. I have done so. As you know I believe your rejection of the $432,000 is not recommended. It is my understanding that the mediation is thus concluded." Goyal Ex. 5 at 5-5.

On March 12, 2004, Mr. Gomberg wrote to Mr. Goyal again, stating that "Per your request, this letter evidences the conclusion of our representation. As you know GTI has offered you $375 [sic] in one lump sum with mutual releases. They are willing to work with you regarding tax relief. I have communicated the aforementioned to you. You have rejected this settlement. I remind you that we have filed an attorney's lien for our fees. We shall forward our costs to you shortly." Gomberg Ex. 4 at 4-1.

**Gomberg Attempts to Persuade Mr. Goyal to Sign a New Agreement**

Notably, Mr. Goyal claims that, shortly after he retained the firm, Mr. Gomberg repeatedly sought to renegotiate the parties' Retainer Agreement. Approximately three weeks after executing the Retainer Agreement, Mr. Gomberg sent Mr. Goyal a letter proposing a new fee arrangement, representing "our Agreement to litigate and/or otherwise resolve this matter." Goyal Ex. 6 at 6-3. This new agreement contemplated significantly higher fees, including a non-refundable retainer of $7,500, plus "a contingency fee of 25% of all monies/value received whether by settlement or judgment." *Id.* The new agreement also discussed various hourly rates, imposed the burden for costs upon Mr. Goyal, and specifically provided that it did not contemplate appellate work. *Id.*

On October 24, 2003, Mr. Goyal wrote to Mr. Gomberg, questioning the need to execute a new agreement. Goyal Ex. 6 at p 6-5. Mr. Goyal acknowledged that the parties' Retainer Agreement contemplated Gomberg's representation only during mediation, and not litigation, and suggested that perhaps it would be best to execute a new agreement covering representation during litigation only if and when mediation failed. *Id.* Mr. Gomberg responded that a newly executed litigation retainer agreement would strengthen their negotiation position with GTI, because it would show GTI that Mr. Goyal was prepared to go to

4

trial if negotiations were not successful. Goyal Ex. 6 at 6-6, 6-7.

On November 24, 2003, Mr. Goyal confirmed that Mr. Gomberg sought additional payment beyond the scope of the Retainer Agreement, stating "Thank you very much for your help last Friday. Regarding paying you additional money at this time, I have thought about it and I am willing to discuss this when we meet next." Goyal Ex. 6 at 6-12. In addition, on February 4, 2004, Mr. Gomberg wrote to Mr. Goyal that research may be required to address all of his questions and that "if research is required a further fee arrangement must be agreed upon." Goyal Ex. 4 at 4-3.

Finally, on March 24, 2004, Mr. Goyal challenged the propriety of Gomberg's lien, stating that he had repeatedly told Mr. Gomberg that his understanding of their agreement was that Gomberg would only get paid if Mr. Goyal settled with GTI while Gomberg was representing Mr. Goyal[1]. Goyal Ex. 4 at 4-5.

**Mr. Goyal Settles With GTI Years After His Relationship with Gomberg Ends**

Mr. Goyal continued to negotiate with GTI on his own. In April 2004, GTI offered Mr. Goyal $550,000, but Mr. Goyal

---

[1] Similarly, in a letter mailed to Mr. Dunne of GTI, with a copy mailed to Mr. Gomberg, Mr. Goyal stated that "Mr. Gomberg has already been paid by me for his services." Goyal Ex. 1 at 1-12.

5

declined to settle the matter. In September of 2005, Mr. Goyal filed a two-count complaint against GTI, alleging retaliatory discharge in violation of the False Claims Act, 31 U.S.C. § 3730(h), and in violation of Illinois law. On March 21, 2006, Mr. Goyal retained the law firm of Childress Duffy Goldblatt, Ltd. ("CDG") to represent him in the lawsuit. Following several failed settlement attempts, on December 23, 2008, Judge Rebecca Pallmeyer granted CDG's Motion for Leave to Withdraw as Mr. Goyal's attorney. Representing himself, Mr. Goyal reached a settlement agreement with GTI in April of 2009 for $1.3 million.

On December 28, 2009, Mr. Gomberg filed a Release of Attorney's Lien, stating that the firm was seeking only $29,382.52 in attorneys fees, plus $4,640 in fees required to date to enforce said lien for a total of $34,022.52. On January 11, 2010, said amount was forwarded by GTI to Gomberg, where it is being held in an escrow account.

## DISCUSSION

### I. Gomberg Is Not Entitled to An Equitable Lien Against Mr. Goyal's Settlement

Under Illinois law, a fee agreement between an attorney and client gives rise to an equitable lien where the agreement "makes an equitable assignment of a portion" of a fund. *Home Fed. Sav. and Loan Ass'n of Centralia v. Cook*, 525 N.E.2d 151, 153 (Ill. App. Ct. 1988). However, an equitable assignment of a portion of a fund is distinct from a mere promise to pay, which does not

6

create an equitable lien. *Wegner v. Arnold*, 713 N.E.2d 247, 252 (Ill. App. Ct. 1999); *compare Dep't of Public Works of Ill. v. Exch. Nat'l Bank*, 417 N.E.2d 1045, 1048-49 (Ill. App. Ct. 1981) (contract provision stating "we hereby agree to pay you . . . an amount equal to [28% of recovery over $132,200.00]" was mere promise to pay); *with Home Fed. Sav. and Loan Ass'n of Centralia*, 525 N.E.2d at 154 (contract provision stating "we agree to pay . . . a contingent fee of 40%" was an equitable assignment).

Here, the language in the Retainer Agreement between Mr. Goyal and Gomberg that purportedly gives rise to an equitable lien is the following:

> [E]ffective immediately our fee includes a ten (10) percent contingency on all monies and items of value that we secure for you beyond what you have obtained from Gas Technology Institute to this date as evidenced by the attached Severance Agreement (Exhibit "A" incorporated hereto and made apart hereof.)
>
> We have a lien on all funds secured by us. . . . This Agreement does not contemplate litigation.

The phrase "[w]e have a lien on all funds secured by us" is clearly an equitable assignment of a portion of a fund, rather than a mere promise to pay. It is not a personal promise on Mr. Goyal's part to pay an amount; rather, it is an assignment of a portion of any judgment Mr. Goyal receives as a result of Gomberg's representation.

The problem with Gomberg's position, however, is that its Retainer Agreement with Mr. Goyal provides that it has a lien on

7

funds "secured by us." The Agreement does not specify whether an amount *offered* by GTI, but rejected by Mr. Goyal, during mediation constitutes funds "secured" by GTI, and the plain language of the agreement would indicate that it does not; an amount merely offered during settlement negotiations hardly strikes the Court as "secured[2]."

Moreover, the Agreement itself indicates that it was not indefinite, but was in effect for only a limited time and purpose, expressly providing that it does not contemplate representation during litigation. Nevertheless, Gomberg filed a lien upon, and received payment from, a fund that was created pursuant to Mr. Goyal's own negotiations with GTI, which took place several years after Mr. Goyal's relationship with Gomberg ended.

Even if the language of the Retainer Agreement were ambiguous- which it is not-- the extrinsic evidence supports Mr. Goyal's position that he had agreed to pay Gomberg a commission only if Gomberg was successful in obtaining a settlement on his behalf. *See generally Tranzact Technologies, Ltd. v. Evergreen Partners, Ltd.* 366 F.3d 542, 548 (7th Cir. 2004) ("The advisors

---

[2] Black's Law Dictionary, Sixth Edition, defines "secure" as "[t]o give security; to assure of payment, performance, or indemnity; to guaranty or make certain the payment of a debt or discharge of an obligation." Illinois courts may rely upon dictionary definitions as evidence of a term's meaning. *See generally, Klemp v. Hergott Group, Inc.* 641 N.E.2d 957, 963-64 (Ill. App. Ct. 1994).

are not allowed to introduce extrinsic evidence unless the contract's terms are ambiguous and ambiguity does not arise merely because Tranzact and the advisors cannot agree on the meaning of the fee provision.") Illinois law generally provides that any ambiguity in a contract should be resolved against the drafter; in this case, Gomberg. *IMR USA, Inc. v. GES Exposition Services, Inc.*, 2005 WL 736589, at *5 (N.D. Ill. Mar. 31, 2005); *Jewelers Mut. Ins. Co. v. Firstar Bank IL*, 792 N.E.2d 1, 4, (Ill. App. Ct. 2003) (noting that the rule that ambiguities are to be construed against the drafter applies to all contracts, not just to insurance contracts).

In addition, emails and letters between Mr. Goyal and Mr. Gomberg support Mr. Goyal's claim that the parties intended that Gomberg would be paid a commission only if Gomberg was successful during mediation. On February 4, 2004, Mr. Gomberg advised Mr. Goyal that he may have to do research to answer some of Mr. Goyal's questions regarding the mediation. Mr. Gomberg indicated, however, that research was beyond the scope of the limited representation contemplated by the Retainer Agreement, stating that "if research is required, a further fee arrangement must be agreed upon" Goyal Ex. 4 at 4-3. The Court need not decide whether legal representation that does not include research constitutes legal representation at all; what is significant about this exchange is that it lends credence to Mr.

Goyal's position that he had retained Gomberg only to represent him for a limited purpose, i.e., mediation, and that the Retainer Agreement contemplated payment only in the event that Gomberg was successful during mediation. Similarly, the correspondence between Mr. Goyal and Mr. Gomberg in October of 2003 suggests not only that Mr. Gomberg regretted the terms of the initial Retainer Agreement, but also that Mr. Gomberg himself recognized that the Retainer Agreement contemplated only a limited relationship between Mr. Goyal and Gomberg. Gomberg has offered no explanation as to why it would need an additional agreement with Mr. Goyal if the initial Retainer Agreement provided a commission to Gomberg even if Gomberg did not successfully negotiate a settlement with GTI.

In conclusion, the Court finds that the plain language of the parties' Retainer Agreement provides that Gomberg would have been entitled to its fees only if it had successfully negotiated a settlement on Mr. Goyal's behalf. Even if the Retainer Agreement were ambiguous on that point, which it is not, Mr. Goyal has introduced sufficient extrinsic evidence to support his position that Gomberg is not entitled to an equitable lien in this case.

**II. Gomberg is Not Entitled to A Statutory Lien**

Gomberg next argues that, even if it were not entitled to an equitable lien, it is entitled to its fees pursuant to Illinois law. The Court acknowledges that Illinois law provides that

attorneys may recover their fees by filing a lien. See 770 ILCS 5/1 (West 2010). The Illinois Attorney's Lien Act "grants an attorney a lien' upon all claims, demands and causes of action' pursued on behalf of the attorney's client for an amount agreed upon by the attorney and client, or in the absence of an agreement, for reasonable attorney's fees and costs incurred." *In re Chicago H & S Hotel Property, LLC*, 419 B.R. 797, 800 (N.D. Ill. 2009). As discussed above, however, the Retainer Agreement between the parties provides that Gomberg is to be paid 10% of the proceeds of a settlement that it secured on Mr. Goyal's behalf. Because Gomberg did not secure such a settlement, it is not entitled to fees under the Retainer Agreement, and, ergo, is not entitled to a lien under the Illinois Attorney's Lien Act. Moreover, the Attorney's Lien Act only provides for an award of reasonable fees and costs in the absence of an agreement. Because there was an agreement in place between the parties, Gomberg is not entitled to reasonable fees and costs under the Attorney's Lien Act. As such, Mr. Goyal and Gomberg's dispute regarding whether GTI was properly served with notice of the lien is beside the point, and Mr. Goyal's Motion to Quash is Granted.

## Conclusion

The Court grants Mr. Goyal's Motion to Quash Gomberg's Attorney's Lien. Gomberg drafted a Retainer Agreement that provided it with attorneys' fees only in the event that it secured a settlement on Mr. Goyal's behalf. Because it was unable to do so, Gomberg's lien was inappropriate and it is not entitled to the monies GTI forwarded to it from Mr. Goyal's settlement proceeds. Therefore, the Court orders Gomberg to return the fees improperly paid to Gomberg by GTI.

Dated: August 10, 2010          ENTER:

*[signature]*
ARLANDER KEYS
United States Magistrate Judge